[No. 13219-9-I. Division One. April 28, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH B. MAHMOOD, *Appellant.*

202

*Peter Camiel,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marilyn Brenneman, Deputy,* for respondent.

GROSSE, J.—Kenneth Mahmood was convicted of two counts of securities fraud, two counts of offering for sale unregistered securities, and one count of first degree theft stemming from his solicitation of money from Ericka Feeney and Louis Woodworth.

During 1981 Mahmood solicited substantial funds from Feeney and Woodworth for investment in two Canadian ventures, Mere Energy and Pioneer Energy. Neither of these ventures had any records of any stock subscriptions by Mahmood on behalf of Feeney and Woodworth until April of 1982 which was subsequent to Mahmood having become aware of a police investigation of his activities. Mahmood's defense was that he was selling subscriptions for a large block of stock that had been reserved for him by McLean and Lyman, the promoters of Mere Energy and Pioneer Energy; that he transferred the investors' funds to these men; and that, as part of their illegal schemes, they later denied reserving the stock for him.

On appeal, Mahmood claims errors in the admission of evidence, in certain instructions, and in the denial of his motions to dismiss for insufficient evidence. We affirm.

## ADMISSION OF EVIDENCE OF CORPORATE AFFAIRS

Two witnesses testified to Mere Energy and Pioneer Energy corporate matters over defense objections that the corporate records were the best evidence. Neither the prosecutor nor these witnesses, who were residents of Canada, had the records in their immediate possession. Cases cited by Mahmood support the proposition that oral testimony of *corporate acts* is inadmissible where complete corporate records are available.[1] Mahmood invites us to extend this rule and hold that all evidence of corporate affairs must be by corporate records. We decline.

To prove the contents of a corporate record, the original writing is required unless it cannot be obtained by any judicial process or procedure. ER 1002 and 1004. However, to the extent that a foundation has been laid that a witness has personal knowledge of a corporate affair, he or she can testify to that affair. ER 602. Accordingly, the court did not err in limiting witnesses' testimony to matters of personal knowledge. To the extent that the matter is a corporate act or is not one of personal knowledge but can be proved only by resort to corporate records, the best evidence rule applies. *See State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979). Accordingly, the court did not err in sustaining defense objections to testimony of the number of shares subscribed by Mahmood.

It is true that one of the State's witnesses, on cross examination, indicated memory problems and indicated

---

[1]In *Walnut Park Lumber & Coal Co. v. Roane,* 171 Wash. 362, 17 P.2d 896 (1933), the Supreme Court held that parol evidence was admissible to prove corporate acts of ratifying promoter acts in contracts prior to incorporation where corporate records were incomplete. In *Kilbourne v. Kilbourne,* 156 Wash. 439, 287 P. 41 (1930), corporate records had been destroyed and other records were admitted to prove the declaration of dividends. In *State v. Merchant,* 48 Wash. 69, 92 P. 890 (1907), the Supreme Court found error in admission of oral testimony of the existence of a corporation.

that the questions could only be answered by resort to corporate records. However, he did not testify to the contents of the records nor were the records admitted. There was no error because there was no proof of the matters allegedly contained in the records. At this point it was incumbent upon the defendant, not the State, to admit the corporate records to prove their contents. Another reason Mahmood's claim of error must fail is that the error was invited by the defense on cross examination. *See State v. Pam*, 101 Wn.2d 507, 680 P.2d 762 (1984).

### AMENDMENT OF INFORMATION

Mahmood argues the trial court committed error in allowing amendment of the information during trial. The original information was filed August 16, 1982. Counts 1 and 2 charged that defendant did

(1) employ a device, scheme and artifice to defraud; and (2) make untrue statements of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in arts, practices, and a course of business which did and would operate as a fraud and deceit upon [Feeney and Woodworth].

On December 29, 1982, the information was amended to add counts 5 and 6.[2] On that date, in response to a defense motion for the bill of particulars, the following exchange took place:

THE COURT: To the best of the State's ability it will provide Mr. Mair with an indication regarding Counts I, II and V of the approximate dates, places, of the conversations that constitute the misrepresentation or untrue statements, and also indicate those times and places, to the best of its ability, in which the exchanges of funds took place or notes or whatever the consideration may have been.

Is that essentially what you are asking for, Pete?

MR. MAIR: Yes. And can we specify what constitutes

---

[2]Counts 1 and 2 charged securities fraud as defined in RCW 21.20.010. Counts 3 and 4 charged the sale of unregistered securities as defined in RCW 21.20.140. Counts 5 and 6 charged first degree theft.

the material facts that were omitted?

THE COURT: Material facts upon which the State relies? Yes, the representations that were made, or the information concealed, whichever the case may be.

MR. MAIR: Your Honor, could there be a specification of what "arts, practices and course of business" is?

THE COURT: No, they are not required to advance you their legal theory.

MR. MAIR: Would that be the same with respect to "device, scheme and artifice to defraud"?

THE COURT: Yes, the pleadings are in terms of the statutory or legal language. I am requiring them essentially to give you the bottom line facts that go to make up the charge.

On February 7, 1983, during trial, the State moved to amend subsection 2 of counts 1 and 2 to read as follows:

[M]ake untrue statements of material facts or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; . . .

The State indicated that any evidence of material omissions would come from a witness to be called later. In light of the fact that the defense still had the opportunity to cross-examine and present a defense on material omissions, the court perceived no prejudice and allowed the amendment.

There was no defense objection to the discovery provided by the State. Defense counsel's comments of December 29 indicate an awareness that the State's case encompassed material omissions. In absence of a showing that Mahmood was misled or surprised, we cannot say that he sustained his burden of showing prejudice. CrR 2.1(d); *State v. Brisebois,* 39 Wn. App. 156, 692 P.2d 842 (1984). Mahmood claims prejudice yet he did not renew his objection to the amendment despite the court's ruling on February 7 that the defense could raise the issue of prejudice later. Nor did defense counsel ask for a continuance.

Of course, if the amendment added a new crime, Mahmood need not show prejudice. Article 1, section 22 of the state constitution prohibits an amendment to an exist-

ing count where the amendment is essentially a different crime. *State v. Olds,* 39 Wn.2d 258, 235 P.2d 165 (1951). Also, if the amendment charged a different crime, a jury's unanimous verdict as to that crime was required. *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984). On the other hand, if the amendment charged another means to commit the crime, our inquiry is limited to whether there was substantial evidence to support that alternative. *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976).

Whether the amendment charged a new crime depends on whether the Legislature intended RCW 21.20.010 to define multiple offenses or a single offense that can be committed in more than one way. Our inquiry in this regard is directed to (1) whether the title of the act indicates a legislative intent to define multiple offenses; (2) whether there is a readily perceivable connection between the acts set forth in the statute; (3) whether these acts are consistent with and not repugnant to each other; (4) whether these acts may inhere in the same transaction. Since penal statutes are generally construed against the State in favor of the accused, any doubt of legislative intent should be resolved by treating the statute as a single offense that can be committed in several ways, rather than by turning a single transaction into multiple offenses. *State v. Arndt, supra.*

Applying the factors to this case we find that for the purposes of RCW 21.20.010, making an untrue statement and omitting to make a material statement are not separate offenses: They are connected by the object of deceiving; they may inhere in the same transaction and they are consistent and not repugnant to each other. Such an analysis is consistent with the rule of lenity described above. RCW 21.20.010 is very similar to the public assistance frauds statute, RCW 74.08.331, which, according to the holding in *State v. Arndt, supra,* defines a single crime that can be committed in several different ways.

## Insufficient Evidence of Securities Fraud

Because RCW 21.20.010 defines a single crime that can be committed in several different ways, we must now determine if there was substantial evidence to support the alternative means of committing securities fraud. In particular, we must determine whether there was sufficient evidence, viewed in a light most favorable to the State, from which any rational trier of fact could have found that Mahmood omitted to state a material fact. *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982). We find that there was substantial evidence of Mahmood's omissions to inform potential investors that shares in the corporations were not being purchased in the names of the investors and that the officers of the corporations had not authorized defendant to obtain investment funds for the companies.[3]

## Misleading Instructions

■ Mahmood also objects to instruction 10 but cites no case or statutory authority to support his objection.[4] He states that a jury would be misled or confused by an instruction on duty to state material facts but cites no authority in support. In light of instructions 6 and 7 which define the elements of securities fraud according to RCW 21.20.010, instruction 10 was mere surplusage. Any error was harmless because it had no effect on the final outcome of the case. *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977).

■ Mahmood objects to the court's pretrial and post-trial instructions stating that the jury was misled. The

---

[3]The trial court found that Mahmood failed to tell investors that the venture was risky.

[4]Instruction 10 reads as follows:

"It is the duty of one selling securities who attempts to supply a prospective purchaser with facts concerning the investment not only to state truthfully what he actually tells, but also not to omit to state any facts within his knowledge which materially change or alter the effect of the facts actually stated. To willfully tell less than the whole truth may constitute a violation of that duty if the statement made is intended to deceive the investor."

court's pretrial instructions on the elements of the crime of securities fraud omitted reference to material omissions; and the court's post–trial instructions included material omissions as an alternative way to commit the crime of securities fraud. Mahmood cites language in *State v. Wanrow* in support of his argument that the jury must be presumed to have been misled by the inconsistent instructions.

> When instructions are inconsistent, it is the duty of the reviewing court to determine whether "the jury was misled as to its function and responsibilities under the law" by that inconsistency.

(Citations omitted.) *Wanrow,* at 239. If the inconsistency results from a clear misstatement of the law, the misstatement must be presumed to have misled the jury in a manner prejudicial to the defendant. *Wanrow,* at 239. In the instant case the instructions were consistent with the evidence. The reason for the change in the instructions was the amendment of the information and the additional proof. Since they were correct statements of the law, the presumption of prejudice did not arise. In absence of this presumption, Mahmood has not met his burden of showing that the jury was misled by the variance in the pretrial instructions and the final instructions, both of which are supported by substantial evidence.

■ Additionally this variance did not constitute a judicial comment on the evidence as the defendant contends. Comments on the evidence proscribed by the state constitution are

> words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial.

*State v. Jacobsen,* 78 Wn.2d 491, 495, 477 P.2d 1 (1970). In *Jacobsen,* the Supreme Court held that the trial court did not comment on the evidence when it allowed the jury to take photographic exhibits into the jury room. In *State v. Owen,* 24 Wn. App. 130, 600 P.2d 625 (1979), the Court of Appeals held that an instruction, which stated that use of

an informer is not a violation of law or of anyone's rights, was not a comment on the evidence because the jury could not reasonably infer that the trial judge believed or did not believe the informant witness. In the instant case, we cannot say that a jury could reasonably infer from the trial court's instructions that the trial judge believed or did not believe certain evidence in the case.

## INSUFFICIENT EVIDENCE OF THEFT

Mahmood argues that negotiable instruments law precludes a conviction on count 6 for theft. Woodworth made out checks to McLean and Lyman for the amount of his investment in Mere Energy. Mahmood argues that McLean and Lyman as payees could endorse the checks to Mahmood legally because they were the owners of the funds. This argument ignores the circumstances underlying the financial transactions. The checks named McLean and Lyman as payees only because Mahmood told Woodworth that the checks were needed to secure Woodworth's investment in Mere Energy and Pioneer Energy. In fact Woodworth received no position in Mere Energy. After the police investigation began, Mahmood offered him stock but Woodworth declined. It was only as a result of Mahmood's misrepresentations that Woodworth sent him the checks. When presenting the checks to McLean and Lyman, Mahmood told them that the checks represented loans for Mahmood's own investment in Mere Energy. Again it was only after this misrepresentation that McLean and Lyman endorsed the checks over to Mahmood. These facts fit the definition of theft in RCW 9A.56.020(1)(a) and (b).

(1) "Theft" means:
(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services[.]

In *State v. Dorman*, 30 Wn. App. 351, 633 P.2d 1340

(1981), an argument similar to Mahmood's was presented. Dorman, who was acting as a trustee for funds from 57 people, spent most of the money for his personal expenses, rather than for the purpose he led the investors to expect. The Court of Appeals dismissed the argument that negotiable instruments law gave Dorman, as payee, legal ownership of the funds, stating that this would lead to an "absurd result that a trustee who receives checks cannot, under negotiable instruments law, embezzle the funds, while one who accepts cash can." *Dorman,* at 358.

### BURDEN OF PROOF AS TO ABSENCE OF EXEMPTION

■ ■ Mahmood argues that the State had the burden of proving absence of an exemption in order to convict defendant under RCW 21.20.140 of offering to sell an unregistered security. Mahmood argues that the case be reversed on the basis of *State v. Acosta,* 101 Wn.2d 612, 621, 683 P.2d 1069 (1984), because the instruction does not adequately inform the jury of the State's burden. We turn to *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983) for help in determining whether the State had the burden of proving absence of an exemption. In *State v. McCullum* the issue was whether the State had the burden of proving absence of self–defense beyond a reasonable doubt. The Supreme Court held that: (1) The issue of self–defense is raised when some evidence is admitted in the case which tends to prove a killing was done in self–defense; that, (2) when the issue is raised, the defendant is entitled to a jury instruction on self–defense; and (3) that the State bears the burden of proving beyond a reasonable doubt the absence of self–defense. In order to determine whether the State bore the burden of proof on the absence of a defense, the Supreme Court used the following analysis: (1) whether statutes reflect a legislative intent to treat absence of a defense as one of the elements included in the definition of first degree murder; and (2) whether self–defense negates one or more elements of the offense which the State must prove beyond a reasonable doubt. *McCullum,* at 490. The

Supreme Court concluded that since the Legislature had not clearly imposed the burden of proving self–defense on criminal defendants, the obligation to prove the absence of self–defense remains at all times on the State. Moreover, the Supreme Court found that self–defense negates the element of intent in first degree murder with the result that requiring an accused to prove self–defense unconstitutionally places on him or her the burden of proving absence of an unlawful criminal intent. In the instant case Mahmood was charged with securities fraud under RCW 21.20.010. Another section of the chapter, RCW 21.20.540, states as follows:

> Exemptions and exceptions, burden of proof. In any proceeding under this chapter, the burden of proving an exemption or an exception from a definition is upon the person claiming it.

RCW 21.20.010 and RCW 21.20.540 are presumed constitutional and it is the duty of this court, whenever possible, to construe these statutes so as to uphold their constitutionality. *State v. Browet, Inc.*, 103 Wn.2d 215, 219, 691 P.2d 571 (1984). Since these two statutes address the same subject matter, we must read them so that the integrity of both is maintained. *South Hill Sewer Dist. v. Pierce Cy.*, 22 Wn. App. 738, 746, 591 P.2d 877 (1979). Therefore, reading RCW 21.20.140 and RCW 21.20.540 together, we find the clear legislative intent to treat proof of a securities exemption as a defense not an element of the crime. We also find that RCW 21.20.540 does not unconstitutionally place the burden of proving an exemption on Mahmood since the defense of a securities exemption does not negate another element of the offense. Also, Mahmood failed to bring forth some evidence of a securities exemption which would entitle him to an instruction on the burden of proof for the exemption defense. At the beginning of the trial the trial court instructed the jury that the State had to prove the lack of exemption from registration. After the State rested, the trial court reconsidered its decision and informed defense counsel that lack of an exemption would not be an

element that the State must prove beyond a reasonable doubt. Mahmood had ample opportunity to bring forth some evidence of an exemption but failed to do so. We can perceive no prejudice to~defendant especially since there was proof beyond a reasonable doubt of the absence of an exemption.

### EVIDENCE OF OTHER ACTS—ER 404(b)

 Evidence of Mahmood's solicitations of other victims was admitted as evidence of a scheme or artifice to defraud. The trial court felt that it did not have to weigh the relevancy and prejudicial effect of the evidence nor did the trial court give an appropriate limiting instruction. In *State v. Jackson,* 102 Wn.2d 689, 689 P.2d 76 (1984), the Washington Supreme Court held that a trial judge errs when he does not enunciate the reasons for a decision to admit evidence under ER 404(b). In *State v. Anderson,* 41 Wn. App. 85, 702 P.2d 481 (1985), the Court of Appeals in a footnote applied *State v. Jackson* prospectively, citing as authority the Supreme Court decision in *State v. Rhoads,* 101 Wn.2d 529, 681 P.2d 841 (1984). In the *Rhoads* case, the Supreme Court held that a case which enunciated a similar rule for ER 609(a) should be applied prospectively. We adopt the reasoning of *State v. Anderson* and apply *State v. Jackson* prospectively. Since *State v. Jackson* was decided after the trial in the instant case, we look to *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981) for guidance on the issue of ER 404(b) evidence. In *Tharp* the Supreme Court did not require a record which showed that the trial judge weighed the probative value against the prejudicial effect. In the instant case, although the court erred in not engaging in the weighing process, admission of the evidence was not error. Its relevancy to prove a scheme or artifice to defraud outweighed any prejudice to Mahmood. Each solicitation was a piece in the mosaic necessarily admitted in order that a complete picture of the scheme be shown to the jury. Also the evidence was necessary to show that Mahmood offered more shares for sale than he had rights

to. Where ER 404(b) evidence is admitted, a cautionary instruction has been recommended by the Supreme Court. *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982). In the instant case, there was no error in failing to give the instruction because Mahmood never requested it. *State v. Hess,* 86 Wn.2d 51, 541 P.2d 1222 (1975).

For the reasons set forth above, there was no error in admitting evidence of Mahmood's contributions to an Alaska union election. The trial court admitted statements by Mahmood to the effect that should the election results be favorable, investment by the union in Mere Energy was imminent. These statements were relevant and material as inducements to the investors. The relevancy of the evidence of contributions and of Mahmood's statements outweighed the prejudicial effect and completed the mosaic of the scheme to defraud.

### LACK OF SUFFICIENT EVIDENCE TO PROVE SALE OF AN UNREGISTERED SECURITY

Mahmood argues that the State was required to prove that Mahmood knew there was a registration requirement in order to convict him under RCW 21.20.140. *State v. Markam,* 40 Wn. App. 75, 697 P.2d 263 (1985) stands for the general proposition that knowledge of the securities laws is not an element of a criminal prosecution for their violation. In rejecting defendant Markam's argument that the State did not prove he knew he was selling a security the Court of Appeals stated that a willful violation of the securities act is satisfied if specific intent is shown to commit fraudulent, misleading, or deceitful acts. *See State v. Cox,* 17 Wn. App. 896, 566 P.2d 935 (1977), *cert. denied,* 439 U.S. 823 (1978); *United States v. Brown,* 578 F.2d 1280 (9th Cir.), *cert. denied,* 439 U.S. 928 (1978). Mahmood cites *United States v. Rubinson,* 543 F.2d 951 (2d Cir.), *cert. denied,* 429 U.S. 850 (1976), which is not binding precedent on this court, for the proposition that the State must prove that Mahmood knew of, or deliberately closed his eyes to, the necessity for registering the stock before selling it.

Instruction 8 which defined willfully and unlawfully as "intentionally and purposely, but not accidentally," required the State to prove that Mahmood intentionally and purposely sold unregistered securities. Although the instruction uses different words, it is generally consistent with *Rubinson*'s requirement that the State prove a deliberate trying to avoid knowing that the securities were required to be registered. Both requirements distinguish a willful act from an accidental act. There was sufficient evidence to prove willful and intentional and purposeful acts by Mahmood. He cautioned investors not to discuss their investments with the promoters of the corporation in attendance at the various social events. The investors' funds were deposited in an unrelated business account. Some funds were transported in cash in suitcases. Cash was stuffed in a car and hidden in a boat. His statement to the investors that a non–Canadian cannot legally invest in Canadian corporations and then his solicitation of funds from non–Canadians shows a guilty purpose and intent as distinguished from mere accident.

The judgment and sentence are affirmed.

SCHOLFIELD, C.J., and WILLIAMS, J., concur.

Reconsideration denied July 15, 1986.

Review denied by Supreme Court October 7, 1986.