[No. 15785-0-I.   Division One.   August 17, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN
BENNETT SOUTHARD, *Appellant.*

*Nancy L. Talner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Lambo, Deputy,* for respondent.

GROSSE, J.—Appellant challenges his conviction for second degree theft. We affirm.

In September of 1983, appellant purchased traveler's checks in the amount of $7,500 from Bank of America through Rainier Bank. In October of 1983, while on a trip to Europe, he allegedly lost $1,000 worth of these checks. He reported this loss to a bank in Germany. The bank gave him replacement traveler's checks as a refund for the loss. Later in October of 1983, several of these "lost" checks were cashed at the Scarlet Tree Restaurant in Seattle. Appellant was charged by information with second degree theft by means of embezzlement and/or theft by deception, occurring between October 7, 1983 and October 18, 1983, the time between when appellant applied for a refund and the "lost" checks were cashed at the Scarlet Tree Restaurant.

At trial the State submitted evidence of the purchase, loss, and refund of the traveler's checks. The night manager of the Scarlet Tree Restaurant testified that several of the "lost" checks were cashed at the restaurant and identified appellant as the man cashing the checks. A handwriting expert testified that he compared a handwriting exemplar from appellant with the countersignature on the traveler's checks and that they were identical. The defense rested without presenting any evidence.

The issue on appeal is whether or not there was sufficient evidence to support the alternative theories of theft

as stated in the "to convict" instruction, instruction 7. This issue requires a threshold determination of whether theft as defined in RCW 9A.56.020, and set forth in instruction 7, describes a single offense committable in more than one way, or separate and distinct offenses each constituting theft.[1] This, in turn, depends upon whether the Legislature intended RCW 9A.56.020 to describe one crime or multiple crimes. If the statute describes more than one crime, there must be a unanimous verdict as to each separate crime described. If the statute describes alternative means of committing a single crime, the inquiry is limited to whether there is substantial evidence to support each alternative. *State v. Mahmood,* 45 Wn. App. 200, 724 P.2d 1021 (1986); *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976).

■ First we look to the Legislature's intent. This inquiry includes

> ■ the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.

*Arndt,* at 379 (quoting *State v. Kosanke,* 23 Wn.2d 211, 213, 160 P.2d 541 (1945)). "Since penal statutes are generally construed against the State in favor of the accused, any doubt of legislative intent should be resolved by treating the statute as a single offense that can be committed in several ways, rather than by turning a single transaction

---

[1]RCW 9A.56.020 states:

"(1) 'Theft' means:

"(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

"(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

"(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

"(2) In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable."

into multiple offenses." *Mahmood,* at 206.

█ RCW 9A.56.020 and RCW 9A.56.010(7), taken together, "set out four distinct types of theft: theft by taking, embezzlement, theft by deception, and appropriation of lost or misdelivered property." *State v. Vargas,* 37 Wn. App. 780, 782, 683 P.2d 234 (1984). The Legislature included more than one form of larceny in RCW 9A.56, and called each theft. *State v. Moreau,* 35 Wn. App. 688, 669 P.2d 483 (1983); *State v. Dorman,* 30 Wn. App. 351, 633 P.2d 1340 (1981). Although the elements of each type of theft are different, they are connected to and not inherently different from each other, as each type of theft is merely a variation on the theme of unlawfully obtaining the property or services of another. Finally, the alternatives are not repugnant to each other; they merely state different ways in which theft might be committed. *State v. Pettit,* 74 Wash. 510, 133 P. 1014 (1913).[2]

We conclude that RCW 9A.56.020 defines a single crime. Accordingly, if there is substantial evidence to support each alternative means charged, "unanimity of the jury as to the mode of commission is not required." *Arndt,* at 376.

The purchase of traveler's checks involves a complete purchase and sale. 11 Am. Jur. 2d *Bills and Notes* § 17, at 47 (1963). Once the sale has been transacted title to the checks passes to the purchaser. The question becomes, after the purchaser has reported lost traveler's checks and has received a refund, what is the purchaser's and the bank's status with regard to the "lost" traveler's checks?

Under the terms of the refund agreement, the purchaser agrees to return to the issuer any check which was reported

---

[2]RCW 9A.56.020, a provision of the new criminal code effective July 1, 1976, is basically a recodification of the former larceny statute, Rem. & Ball. Code § 2601, Laws of 1909, ch. 249, § 349, amended by Laws of 1915, ch. 165, § 3. Although the language is somewhat altered, RCW 9A.56.020 simplifies and reorganizes Rem. & Ball. Code § 2601 by omitting certain method–specific definitional language from the definition of theft and reinserting it under the general definitions in RCW 9A.56.010. The elements of the types of larceny and embezzlement included in RCW 9A.56.010 have not changed.

lost or stolen but later found. The refund agreement provided:

7. I certify that:
A. The cheques listed in 6 above as lost, stolen, or destroyed were never knowingly or voluntarily negotiated (endorsed or delivered to others), cashed, or assigned (transferred), either directly or indirectly, but were:
(Please Check One)
/x/ Signed by me at time of purchase but not countersigned by me.
. . .
B. By signing this application on the back, I—and any person(s) signing as guarantor(s)—agree that we will be individually and as a group liable for the whole amount of any of the cheques listed in 6 above which 1) I may have countersigned, negotiated, cashed or assigned, or may later do so; and 2) for which I am claiming a refund.
C. I will surrender to you any of these cheques if they are found.

This, in essence, establishes an express trust whereby the purchaser is "trustee" holding the checks for the issuer/bank.[3] Appellant was under an obligation to return any "lost" check, but substantial evidence indicated he failed to do so. This is a violation of a trust obligation amounting to embezzlement.

▮ Deception occurs when an actor knowingly creates a false impression in the mind of another which the actor knows to be false. RCW 9A.56.010(4)(a). A person acts "knowingly" when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
(ii) he has information which would lead a reasonable

---

[3] "'An express trust is one created by the act of the parties; and, where a person has, or accepts, possession of money, promissory notes, or other personal property with the express or implied understanding that he is not to hold it as his own absolute property, but to hold and apply it for certain specified purposes, an express trust exists. [Citing authority.]'" *Smith v. Fitch,* 25 Wn.2d 619, 626–27, 171 P.2d 682 (1946) (quoting *Tucker v. Brown,* 199 Wash. 320, 330–31, 92 P.2d 221 (1939)).

man in the same situation to believe that facts exist which facts are described by a statute defining an offense. RCW 9A.08.010(1)(b). "[State of mind] may be inferred from all the facts and circumstances surrounding the commission of an act or acts." *State v. Bergeron,* 38 Wn. App. 416, 419, 685 P.2d 648, *aff'd,* 105 Wn.2d 1, 711 P.2d 1000 (1984). Although appellant did not testify as to his state of mind or intent upon applying for the refund, a reasonable inference of deception arises from the State's evidence. The State presented evidence of "lost" checks cashed in England, on appellant's return from Europe, and later in California and Washington. The countersignature on those "lost" checks matched appellant's signature.

Appellant's actions constitute either theft by deception or embezzlement. There is sufficient evidence to support either theory expressed in instruction 7. Therefore, the instruction was proper.

We affirm the conviction.

COLEMAN and WEBSTER, JJ., concur.