# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74008-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL C. McKINNON, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: August 29, 2016 |
| | ) | |

Cox, J. — Michael McKinnon appeals his judgment and sentence for theft by deception, arguing that insufficient evidence supports his conviction. We hold that the State failed to prove that he obtained control of property through aid or color of deception, one of the necessary elements of theft by deception. Accordingly, we reverse his conviction.

In 2006, the Maplevine Condominium Homeowners Association hired McKinnon to provide accounting and bookkeeping services. As part of these services, McKinnon would receive the association's dues and other income and pay the association's bills. McKinnon was authorized to pay himself for his services.

In 2007, McKinnon began taking funds from the association's accounts without its authorization. He characterized this as "borrowing," and periodically repaid some or all of the funds with interest.

McKinnon provided the association with yearly spreadsheets listing the association's funds. In these spreadsheets, McKinnon would list the funds he misappropriated as being in non-existent accounts. For example, in 2007 McKinnon provided a spreadsheet to the association that showed $10,616.98 in a "Cascade Savings" account. McKinnon had actually misappropriated these funds.

Between 2007 and 2011, McKinnon took approximately $134,000 from the association's accounts without authorization. During this same period, he repaid approximately $142,000 to the association, including $8,000 of interest.

In 2011, the association hired a management company and no longer required McKinnon's services. McKinnon then disclosed that he had been taking money from the association's accounts for his personal use. He stated that he periodically withdrew money from the accounts, which he later repaid with interest. In September 2011, McKinnon paid the association $23,000 to repay the last of the funds he took. The association did not report McKinnon's actions to authorities at that time.

The association later audited its financial records and confirmed that McKinnon took funds without authorization and repaid them with interest.

In March 2014, the association reported McKinnon's unauthorized use of funds to the Lynnwood Police Department and the Snohomish County

Prosecutor. In a voluntary interview with a police officer, McKinnon admitted to the facts described earlier. In August 2014, the police department referred the case to the Snohomish County Prosecutor for charging review.

In January 2015, the State charged McKinnon with first-degree theft, alleging that he obtained control of the association's funds "by color or aid of deception." At this time, the statute of limitations to charge McKinnon with embezzlement had expired.

McKinnon moved to dismiss the case under State v. Knapstad[1] for failure to establish every element of the offense. The trial court denied the motion.

The parties agreed to a bench trial on stipulated documentary evidence. The court determined that McKinnon was guilty of theft by deception.

McKinnon moved to arrest judgment, arguing that while the evidence established embezzlement, it did not establish theft by deception. The trial court denied the motion.

McKinnon appeals.

## THEFT

McKinnon argues that there is insufficient evidence of theft by deception in this case. We agree.

RCW 9A.56.020 sets out different means by which a person may commit the crime of theft. One means is to wrongfully "exert unauthorized control over the property or services of another."[2] This means is commonly known as

---

[1] 107 Wn.2d 346, 729 P.2d 48 (1986).

[2] RCW 9A.56.020(1)(a).

3

embezzlement.[3] A different means, known as theft by deception, is "[b]y color or aid of deception to obtain control over the property or services of another."[4]

Although these are alternate means of committing the same crime, a three-year statute of limitations applies to embezzlement, while a six-year statute applies to theft by deception.[5]

These crimes are not "mutually repugnant"—under some circumstances, a defendant may commit both theft by deception and embezzlement.[6] Proving one means does not necessarily disprove the other.[7]

McKinnon raises a variety of challenges on appeal. He challenges the court's denial of his Knapstad motion, its determination that sufficient evidence supported finding him guilty of theft by deception, and its ruling that the statute of limitations for embezzlement did not bar prosecuting McKinnon.

But a single question resolves all of McKinnon's claims: do the facts of this case provide sufficient evidence that McKinnon committed theft by deception?

---

[3] State v. Joy, 121 Wn.2d 333, 339, 851 P.2d 654 (1993).

[4] RCW 9A.56.020(1)(b).

[5] RCW 9A.04.080(1)(d)(iv), (1)(h).

[6] State v. Pettit, 74 Wash. 510, 519, 133 P. 1014 (1913) (analyzing former larceny statute). RCW 9A.56.020 is a recodification of the former larceny statute—the elements of theft by deception and embezzlement have not materially changed. State v. Southard, 49 Wn. App. 59, 62 n.2, 741 P.2d 78 (1987).

[7] Id.

## *Sufficiency of the Evidence*

McKinnon argues that insufficient evidence supports his conviction for theft by deception. We agree.

Evidence is sufficient when any rational trier of fact could find beyond a reasonable doubt the essential elements of the crime.[8] When considering a sufficiency challenge, we defer to the fact finder's determination as to the evidence's weight and credibility.[9] "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it."[10] Whether evidence is sufficient is a question of constitutional law that we review de novo.[11]

Here, the crucial inquiry is whether there is sufficient evidence that McKinnon obtained control of the association's funds by color or aid of deception, as the theft by deception statute requires.[12] "Obtain control over" has its "common meaning," as well as other definitions that do not apply in this case.[13]

---

[8] State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

[9] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

[10] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

[11] State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

[12] RCW 9A.56.020(1)(b).

[13] RCW 9A.56.010(10).

We focus on the word "obtain." According to the American Heritage Dictionary, "obtain" means "[t]o succeed in gaining possession of as the result of planning or endeavor; acquire."[14]

Here, McKinnon's deception involved misrepresenting the location of the funds he removed from the association's accounts. In its oral ruling, the court found:

> the deception that I saw in this case had to do with essentially the hiding of the assets. The assets were not couched as a loan to Mr. McKinnon in this case. They were described as being securely invested; that is the deception that I see in this case.[15]

But there is no evidence that McKinnon used this deception to obtain control over the association's funds.

The association hired McKinnon in 2006. He first deceived the association in a report sent in December 2007. Thus, McKinnon had control over the association's funds before he deceived them. Accordingly, he did not use deception to **obtain** control over the funds.

McKinnon used deception to hide the fact that he was misappropriating the association's funds. But this is insufficient to establish theft by deception. The statute's plain language requires that the defendant use deception to "obtain control over" the property.[16] Here, McKinnon did not use deception to obtain

---

[14] THE AMERICAN HERITAGE DICTIONARY (5th ed. 2016) https://ahdictionary.com/word/search.html?q=obtain.

[15] Report of Proceedings (July 8, 2015) at 4.

[16] RCW 9A.56.020(1)(b).

6

control of the funds. Rather, he already had control of the funds and used deception to retain control.

A leading treatise supports this interpretation: "The difference between theft by deception and embezzlement lies in whether the defendant had lawful possession of the property prior to the theft."[17] If the defendant had lawful possession before the theft, then he cannot be guilty of theft by deception.[18]

Here, McKinnon initially had lawful possession of the association's funds. Although he misappropriated the funds, and attempted to hide his misappropriation, this deception did not convert his embezzlement into theft by deception.

Case law also supports this conclusion. In State v. Smith, the supreme court interpreted a previous version of the theft statute, then known as larceny.[19] That statute, like the present theft statute, had embezzlement and theft by deception as alternate means of committing the same offense.[20] The elements of the different means have not materially changed—RCW 9A.56.020 merely rephrases and reorganizes the previous statute.[21]

---

[17] 13B SETH A. FINE AND DOUGLAS J. ENDE WASHINGTON PRACTICE: CRIMINAL LAW § 2608 at 137 (2015-2016 ed.).

[18] Id.

[19] 2 Wn.2d 118, 98 P.2d 647 (1939).

[20] Southard, 49 Wn. App. at 62 n.2; Rem. Rev. Stat. § 2601.

[21] Id.

In Smith, Bian Smith managed a business. [22] In this role, "he had complete control of all the business of the company, including the bank deposits" and was the only person authorized to write checks from the company's accounts.[23] He used funds in the company's account to purchase various personal investments.[24] To do this, Smith wrote checks that his codefendant cashed.[25] To hide these transactions, Smith would place personal checks in his codefendant's name payable to the company in the company's cash box.[26]

The State charged Smith with larceny, but not under the means of embezzlement.[27]

The supreme court distinguished embezzlement from other means of committing theft:

> "In embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully appropriated by him; in [other means of theft], there is a trespass in the unlawful taking of the property. Embezzlement contains no ingredients of trespass, which is essential to constitute the [other means of theft]. Moreover, embezzlement does not imply a criminal intent at the time of the original receipt of the property, whereas in [other means] the criminal intent must exist at the time of the taking."[28]

---

[22] Smith, 2 Wn.2d at 119.

[23] Id. at 119-20.

[24] Id. at 120.

[25] Id.

[26] Id.

[27] Id. at 121.

[28] Id. (quoting 18 Am. Jur., Embezzlement, § 3, p. 572).

The court determined that Smith had the funds lawfully in his possession before he wrongfully appropriated them.[29] Thus, he was guilty only of embezzlement and not of another means of theft.[30] Accordingly, the court reversed his conviction.[31]

Similarly, in State v. Renhard, the supreme court reversed Marcus Renhard's conviction for larceny by deception.[32] Renhard was the president of a corporation.[33] He used two corporate checks for his personal use.[34] Both Renhard and a secretary had to sign the corporation's checks.[35] But the secretary's signature was only a precaution against forgery—the secretary had no authority to refuse to sign a check.[36]

The State's evidence showed that Renhard informed the secretary that the checks were to purchase equipment for the corporation.[37] But he instead used them to purchase personal property.[38]

---

[29] Id. at 122.

[30] Id.

[31] Id. at 127.

[32] 71 Wn.2d 670, 674, 430 P.2d 557 (1967).

[33] Id. at 670-71.

[34] Id. at 671.

[35] Id.

[36] Id.

[37] Id.

[38] Id.

The court held that insufficient evidence supported Renhard's conviction for larceny by deception. The court held that the State failed to prove that Renhard's deception was necessary to obtain the funds. The court also held that Renhard "had lawful control of the funds of the corporation, and these checks were, in effect, drawn by him."[39] Thus, larceny by embezzlement was "the only section [of the larceny statute] applicable to the facts of this case."[40]

In contrast, in State v. Johnson, the supreme court upheld Francis Johnson's conviction for larceny by deception.[41] In that case, Johnson's codefendant was an insurance adjuster.[42] The adjuster would create false claim files and authorize payment for the claims.[43] Then Johnson would cash the insurance checks and share the proceeds with his codefendant.[44]

On appeal, Johnson argued that he had committed only embezzlement, not theft by deception, because his codefendant lawfully possessed the funds.[45] The supreme court disagreed, distinguishing Smith.[46]

---

[39] Id. at 672.

[40] Id. at 673.

[41] 56 Wn.2d 700, 355 P.2d 13 (1960).

[42] Id. at 703.

[43] Id.

[44] Id. at 704.

[45] Id. at 705.

[46] Id. at 704-05.

The supreme court held that the insurance adjuster had the authority "only to order the payment of the company's funds."[47] This authority was not the equivalent to possessing the funds. Other employees possessed the funds, and the adjuster did not possess them until the other employees executed the payments he ordered.[48] Thus, Smith was distinguishable, and Johnson was properly convicted of larceny by deception.[49]

Here, McKinnon's case is analogous to Smith and Renhard. As the association's accountant, McKinnon had lawful possession of the association's funds. McKinnon would use the funds to pay the association's bills and had the authority to pay himself. Although McKinnon misappropriated the funds to his personal use, he had lawful possession when he did so. Thus, just as in Smith and Renhard, McKinnon committed only the crime of embezzlement. The evidence does not support a conviction for theft by deception.

McKinnon's case is also distinguishable from Johnson. In Johnson, the insurance agent did not have possession of the funds. He obtained the funds by falsifying insurance files to get his coworkers to execute payments. Thus, it was clear that the insurance agent used deception to obtain the funds.

Here, the State failed to prove such a link between McKinnon's deception and the association's funds. If McKinnon had requested and obtained additional funds from the association after falsely claiming that an unexpected cost arose,

---

[47] Id. at 705.

[48] Id.

[49] Id.

he would have been guilty of theft by deception. Similarly, if McKinnon had falsely informed the association's members that their dues had increased and obtained additional funds, he would have been guilty of theft by deception. But here, the State failed to establish that McKinnon used deception to obtain control over additional funds. Instead, the evidence shows only that McKinnon used deception to hide his misuse of the funds that he already controlled.

The State relies on State v. Mehrabian[50] to argue that sufficient evidence supports McKinnon's conviction. But that case is distinguishable.

In Mehrabian, Sassan Mehrabian worked for the City of Woodinville as its information technology manager.[51] His responsibilities included purchasing the city's computer equipment.[52] When purchasing equipment, Mehrabian was required to obtain three bids for the equipment and present the lowest bid to his supervisors for approval.[53]

Mehrabian also owned a computer equipment business.[54] The city prohibited its employees from engaging in business with the city.[55] Despite this prohibition, Mehrabian sold equipment to the city, using a third party vendor to

---

[50] 175 Wn. App. 678, 308 P.3d 660 (2013).

[51] Id. at 683.

[52] Id. at 701.

[53] Id. at 684.

[54] Id.

[55] Id.

invoice his sales.[56] Mehrabian sold the equipment to the city at substantial markups and often delivered equipment that was inferior to the invoice his supervisors approved.[57] Mehrabian also forged price quotations to obtain his supervisors' approval.[58] And on some occasions, Mehrabian forged invoices from the third party vendor, charging the city without delivering any equipment.[59]

The State charged Mehrabian with theft by deception after the city discovered the discrepancies in its computer equipment inventory.[60]

On appeal, Mehrabian argued that insufficient evidence supported his convictions.[61] Specifically, he argued that the State had not proven that the city relied on his misrepresentations when it purchased the equipment.[62] This court disagreed, noting:

> Neither [of Mehrabian's supervisors] knew they were approving business deals with Mehrabian, and both said they probably would not have approved the deals had they known the true facts. Neither [supervisor] knew Mehrabian was enriching himself through these transactions, and both supervisors testified he did not have permission to do so . . . .
>
> Mehrabian induced the City to pay out money by color or aid of deception: He purchased property himself, invoiced the City

---

[56] Id.

[57] Id.

[58] Id.

[59] Id.

[60] Id.

[61] Id. at 699.

[62] Id.

through [the third party vendor] at a substantial markup, invented price quotes, forged invoices, delivered an inferior product or failed altogether to deliver the purchased property, and enriched himself through the transactions. He created the impression that he was legitimately engaging in business with another company for the purchase and delivery of computer products. That false impression caused the City to engage in business it would not otherwise have undertaken.[63]

Mehrabian is not analogous to McKinnon's case. In Mehrabian, it was clear that Mehrabian was "obtaining control" over the funds through deception. He would provide forged price quotations to his supervisors and then the equipment would be purchased with his supervisor's credit card.[64] Prior to the deception, he did not have control over the city's funds. Thus, he used deception to obtain the funds.

The only question on appeal was whether Mehrabian obtained these funds because the city relied on his deception or whether the city would have purchased these items regardless of his deception.[65] The court determined that there was sufficient evidence that the city relied on his deception.[66]

Thus, McKinnon's case is distinguishable. As explained earlier, the State failed to show that McKinnon used deception to obtain control over the association's funds. Accordingly, Mehrabian is not helpful.

---

[63] Id. at 707-08.

[64] Id. at 703-04.

[65] Id. at 699, 707-08.

[66] Id. at 707.

The State also argues that McKinnon obtained control over the association's funds under the definition found in RCW 9A.56.010(10). That statute provides: "'Obtain control over' in addition to its common meaning, means: (a) In relation to property, to bring about a transfer or purported transfer to the obtainer or another of a legally recognized interest in the property."[67]

The State argues that McKinnon's "unauthorized transfer of [the association's] reserve funds into his own personal account created a legally recognized interest that he alone exclusively controlled."[68] This argument is untenable.

Black's Law Dictionary defines a legal interest as "[a] legal share in something; all or part of a legal or equitable claim to or right in property <right, title, and interest>."[69] When McKinnon transferred the funds to his personal account, he did not create any legal or equitable right in the funds. Rather, he used the funds without any legal claim to them. The State also fails to cite any authority for its argument that McKinnon created a legally recognized interest in the funds by transferring them to his personal account. Thus, this argument is unpersuasive.

---

[67] RCW 9A.56.010(10).

[68] Brief of Respondent at 19.

[69] BLACK'S LAW DICTIONARY 934 (10th ed. 2014).

The State also argues that McKinnon failed to assign error to the court's findings. Because his argument is clear, the failure to assign error does not hinder our review.[70]

We reverse McKinnon's conviction for theft by deception.

_Cox, J._

WE CONCUR:

_Trickey, ACJ_

_____

[70] See State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).