658 P.2d 185

**The STATE of Arizona, Appellee,**

v.

**Steven Matthew BROKAW, Appellant.**

**No. 2 CA–CR 2438.**

Court of Appeals of Arizona, Division 2.

April 2, 1982.

Rehearing Denied May 12, 1982.

Review Denied June 8, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Asst. Public Defender, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

After a jury trial, the appellant was convicted of theft. The basis of that charge was the appellant's acquisition of the services of a limousine rental agency by means of a material misrepresentation, A.R.S. § 13–1802(A)(3). The jury found those services to have a value in excess of $100, which made the offense a class 4 felony. A.R.S. § 13–1802(C). The trial court imposed the presumptive sentence of four years imprisonment. The appellant challenges rulings of the trial court that allowed the introduction of evidence concerning other bad acts. He also contends that the court erred in denying his request for an instruction allowing the jury to find the services to be worth less than $100.

Evidence at trial revealed that the appellant had obtained the use of four chauffeured limousines by falsely claiming that he was the head of security for the rock music group "Fleetwood Mac." While making arrangements to rent the limousines, the appellant had claimed that payment for the service would later be made by the band's road manager. Two of the limousines were used to take the appellant and several others to a restaurant, the Lunt Avenue Marble Club. the others were later dispatched to the restaurant, ostensibly to transport members of the party to the Marriot Hotel, where the appellant, again claiming to represent "Fleetwood Mac," had previously reserved 15 to 20 rooms. When the second pair of limousines arrived at the restaurant, one of the drivers learned that his employer had been hoodwinked. The appellant had sneaked away, leaving the members of his party to pay for a lavish meal for which they and the restaurant management had believed he was going to pay.

The appellant was later arrested in Pinal County after making a false report of an airplane crash. In Pinal County, he pled guilty to charges of unlawful possession of marijuana and making a false emergency report. He was then brought to trial in Pima County.

On the first day of trial, the appellant made a "motion in limine" to exclude, inter alia, evidence of his activities at the Lunt Avenue Marble Club. That motion was based upon Rule 404(b), Arizona Rules of Evidence, 17A A.R.S.:

"Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The trial court refused to exclude this evidence, which was presented at trial during testimony of the restaurant's assistant manager. The appellant now contends that this

evidence was inadmissible and should have been excluded.

We agree, however, with the trial court's ruling that evidence of the events at the Lunt Avenue Marble Club was admissible to show intent, and under what is frequently called the "complete story" exception to the general rule excluding evidence of other crimes, wrongs or bad acts. *See, e.g., State v. Price,* 123 Ariz. 166, 598 P.2d 985 (1979); *State v. Reinhold,* 123 Ariz. 50, 597 P.2d 532 (1979); *State v. Ferguson,* 120 Ariz. 345, 586 P.2d 190 (1978). Although the appellant's abandonment of his dinner "guests" may have been a bad act in and of itself, it was also the very act that best revealed his intent to deprive the limousine agency of the value of its services. When the appellant absconded from the restaurant he also abandoned the limousines. It is therefore difficult to imagine how the state could have presented its case clearly without showing what had occurred at the restaurant.

The appellant also complains of the admission of testimony from the highway patrolman who arrested him. That testimony revealed that the appellant had falsely reported a plane crash in Pinal County, had led responding officers on a "wild goose chase" looking for the crash, and had been arrested after the strange conduct led the officers to run a record check on his vehicle. The officer made no mention of the marijuana apparently found in the appellant's possession at the time of the arrest, nor did he mention the charge of false reporting or its disposition.

The appellant made no objection to this testimony as it was given. He contends, however, that an agreement with the prosecutor, reached during argument on his motion in limine, precluded the use of this evidence. A review of the transcript of that hearing reveals otherwise. The appellant's motion sought only the exclusion of evidence of the charges filed against him in Pinal County and of his guilty plea. The prosecutor agreed that he would instruct the witnesses to avoid mention of those subjects. Clarification of that agreement is found in the following exchange, which took place at the end of the hearing:

"MR. ALTHAUS [Defense Counsel]: Your Honor, on the record for just one more thing. It is going to be virtually impossible for Mr. Strohm to bring up the incident in Eloy, without going into this a little bit as to the phone call.

I'm just concerned about pleading to the charge itself, the reference that: didn't he plead to the charge? By that I mean, I'm not talking about the fact he did call the police. I have no problem with that. Because it is not going to make sense for him to have met up with the police. The jury is going to want to know what happened.

*I'm talking about the criminal charges afterwards. That is the only thing I have objection to.*

THE COURT: The other criminal charges?

MR. ALTHAUS: The UPOM and the fact he did plead to—

MR. STROHM [Prosecutor]: I think what the concern is—there is a distinction between the bad act, in terms of the actual plea to the misdemeanor of a false alarm, as opposed to the act of phoning in a false alarm.

I will produce evidence that will say the reason the officers stopped this fellow or got in contact with him in Pinal County is because he turned in a false alarm. But I will not get into the fact that he pled guilty to that charge.

MR. ALTHAUS: I just wanted to clarify that. Thank you, Your Honor." (emphasis added)

From this exchange it appears that the officer's testimony was presented in precise conformity with the agreement. Any error in the admission of that testimony was waived.

In his final claim of error, the appellant contends that he was erroneously denied a jury instruction on the "lesser included offense" of "theft of property or services having a value of $100 or less." He argues that he was entitled to such an instruction because there was evidence from which the

jury could rationally have found that the value of the services involved did not exceed $100.

■■ We do not believe that this "lesser included offense" analysis can properly be applied to our current theft statute, A.R.S. § 13–1802. That statute does not create separate offenses having the value of the stolen property or services as the distinguishing element. Instead, it defines a single crime, theft, and provides that the classification of the offense for punishment purposes is to be determined by the value of the stolen property or services. A.R.S. § 13–1802(C). A separate statute, A.R.S. § 13–1801(8) requires the finder of fact to determine this value when it is in question. Like other determinations relevant only to the computation of punishment under the present criminal code, we believe this determination was intended to be made separately from the determination of guilt or innocence. If there was evidence in this case, therefore, from which the jury could rationally have found a value of $100 or less, the appellant was entitled to the opportunity to have the jury make that finding.[1] Our review of the record, however, reveals no such evidence.

The only testimony on the subject of value came from the general manager of the limousine rental agency. His uncontroverted testimony was that the first two limousines were dispatched at 1:00 p.m. and returned at 5:30 p.m. The second pair of limousines was dispatched to the restaurant at 3:30 p.m. and returned within the hour. The agency's established charge for its service was 20 dollars per vehicle per hour or portion of an hour, computed from the time of dispatch to the time of return. Using this formula, the value of the services actually performed would be $240 (2 limousines for 5 hours each plus 2 for 1 hour each, a total of 12 "vehicle hours"). The witness testified, however, that his company had been deprived of $320. That testimony further revealed that this figure represented the anticipated "benefit of the bargain" to the company—the amount that would have been due if all four limousines had actually been used until the pre-arranged time of 6:30 p.m. In any event, the figure obtained by either method is well in excess of $100.

■ The appellant's argument for a lower figure is apparently premised upon a belief that he "obtained" less than 5 "vehicle hours" worth of service, because he disappeared after the first two limousines had been in use for only two hours each and before the second pair was dispatched. He therefore received the benefit of less than $100 worth of service. The problem with this argument is that nothing in the theft statute requires that the offender receive the benefit of stolen services. The crime is committed by "obtaining" services. The term "obtain" is defined in A.R.S. § 13–1801(5) to mean, with regard to services, "to secure performance of a service." While a dictionary gives several definitions of the verb "secure," the definition of that term most consistent with the purpose of the theft statute is "to bring about." Webster's Third New International Dictionary (1971). We conclude, therefore, that the correct measure of the value of services under A.R.S. § 13–1802(C) is the value of the performance actually brought about by the offender's conduct, that being the value that most correctly represents the loss to the victim. From the uncontroverted evidence in the case, it was not possible for the jury to rationally find that the value of the performance actually brought about was $100 or less. *See State v. Dugan,* 125 Ariz. 194, 608 P.2d 771 (1980). We therefore conclude that the appellant was not entitled to the requested instruction and that he suffered no prejudice from the jury's determination of value in its deliberations as to guilt or innocence.

Our review of the record has revealed one technical error in the judgment of the trial court, and the state, in its answering brief, has directed our attention to another. The offense of which the appellant was convicted is a class 4 felony. In sentencing the appellant, the trial court expressly stated

---

1. This could be done by interrogatory.

that it was imposing the presumptive term and imposed a term of four years, which is the presumptive punishment for a class 4 felony. A.R.S. § 13–701(B)(3). The court's judgment, however, erroneously describes the offense as a class 5 felony. In addition, the trial court erroneously sentenced the appellant "to the custody of the Department of Corrections" instead of "to imprisonment." *See State v. Gutierrez*, 130 Ariz. 148, 634 P.2d 960 (1981). We therefore modify the judgment and sentence to show conviction of a class 4 felony and a sentence to imprisonment for four years, beginning June 25, 1981, with credit for 163 days of presentence incarceration.

As modified, the judgment and sentence are affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.