[No. 62725-8. En Banc. November 9, 1995.]
THE STATE OF WASHINGTON, *Respondent*, v. EARL LEE, *Petitioner*.

*Hugh M. Spall, Jr.*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Bruce Hanify* and *Michael G. McCarthy, Deputies*, for respondent.

MADSEN, J. — The Defendant seeks review of a court of appeals decision affirming his conviction for second degree theft. He contends that the jury was improperly instructed and that the evidence was insufficient to support the conviction where neither of the named victims suffered a loss as a result of the alleged taking. We find the jury instructions were correct, but reverse the conviction because the State did not offer sufficient evidence of loss.

## FACTS

On June 23, 1992, Guy Hanson accepted Earl Lee's offer to buy a house on North 7th Street in Yakima which Hanson had inherited from his mother. Under the terms of the earnest money agreement, Lee was to take possession of the property on July 10, the closing date.

The house had been vacant for several years and was in such a state of disrepair that it would be impossible to obtain insurance, which Lee was obligated to provide. Lee offered to paint the residence before closing to secure insurance. The realtor told Lee to check with his insurance company to see what needed to be done to make the house insurable, but Lee never got back to her. Lee's friends and relatives eventually replaced all of the windows in the house, put a new floor in, laid linoleum, repaired the bathroom, put a wall partition in, and painted the inside and outside of the house. Lee's attorney stated during closing argument that the Lees put more than $1,800 in time, money, and materials into the 7th Street residence. At trial, Hanson denied giving Lee permission to make these repairs or to take early possession for any reason.

On June 24, 1992, Lee signed a Red Cross emergency housing certificate agreeing to rent the 7th Street residence to Victor Valenzuela and Lucila Dominguez from

June 28 to July 28. (The Red Cross was providing the couple with emergency housing assistance following the destruction of their apartment in an arson fire on June 22, 1992.) The Red Cross rejected this form, however, because Lee wanted the tenants to pay $200 for insurance. A second form was prepared without that condition and was signed by one of Lee's employees on his behalf. The Red Cross accepted this form and sent Lee a check for $700, which he deposited in his savings account. The evidence was in conflict over whether Lee intended to rent the 7th Street house or a room in a boarding house he owned. In any event, Valenzuela and Dominguez moved into the 7th Street residence on July 5, after repairs to the house were complete.

Hanson visited the house on July 8 and found it repaired and occupied. Valenzuela told Hanson he and Dominguez were renting the property from Lee. When confronted, Lee seemed surprised to hear of their occupancy. Lee failed to appear for closing and forfeited his $350 earnest money. Valenzuela and Dominguez remained on the property and eventually purchased it from Hanson.

The Yakima County prosecutor charged Lee with second degree theft and first degree criminal trespass. In the theft count, the prosecutor alleged that Lee "did wrongfully obtain or exert unauthorized control and/or did, by color or aid of deception obtain control over property, of a value in excess [of] $250.00, belonging to Lucila Dominguez and/or the American Red Cross, with intent to deprive the same of such property." Clerk's Papers at 52.

At the end of the four-day trial, the court instructed the jury that to convict Lee of theft, it had to find that he "wrongfully obtained or exerted unauthorized control over the property of another, and/or by color or aid of deception did obtain control over the property of another," that the property exceeded $250 in value, and that Lee intended to deprive "the other person" of the property. Clerk's Papers at 41. In closing argument, the prosecutor told the jury that the "gist of the case" was that Lee

rented a house he did not own and accepted $700 from the Red Cross as rent. Report of Proceedings at 693-94. Defense counsel argued that there was no victim, and thus no theft, because Dominguez received the housing for which the Red Cross paid Lee $700.

At 5:00 P.M. on the first full day of jury deliberations, the trial court directed the bailiff to find out whether the jury wished to continue deliberating during the evening or return the following morning. The jury sent the court a note which said, "We seem to be in deadlock. We have several conflicting opinions, with little hope of change. What are our legal options?" Supplemental Report of Proceedings at 2. After discussing the matter with counsel, the court asked the foreman, outside the presence of the other jurors, if he felt that further deliberations, either that evening or the next morning, would be beneficial. The foreman did not believe so. Following additional discussion with counsel, the court asked the foreman if there was "a reasonable probability of the jury reaching an agreement on one or both counts." Supplemental Report of Proceedings at 22. The foreman said "probably not." Supplemental Report of Proceedings at 22. The court then asked the same question of each juror, outside the presence of the others. All but one was also asked if he or she thought further deliberations either that day or the next would be beneficial. Three jurors thought a verdict might be possible on one count.

Defense counsel moved for a mistrial on the ground that the jury was deadlocked. The court denied this motion and gave the jurors an additional written instruction excusing them until the following morning "when you will return to the jury room for further deliberations." Clerk's Papers at 29. On that following day, the jury acquitted Lee of criminal trespass and found him guilty of second degree theft. The trial court denied Lee's motion for a new trial and ordered a sentence of thirty days converted to 240 hours of community service, and two years of community supervision.

Lee appealed his conviction, arguing that the trial court erred in failing to instruct the jury that it had to unanimously agree on the victim of the theft and that there was insufficient evidence to support his conviction. Lee also argued that the trial court coerced the jury into reaching a verdict after it announced it was deadlocked. The court of appeals affirmed Lee's conviction in a published decision. *State v. Lee*, 77 Wn. App. 119, 889 P.2d 944 (1995).

Lee then petitioned for discretionary review, which this court granted.

## I

The first issue raised is whether the trial court erred in failing to instruct the jury that it had to unanimously agree on the victim of the theft. Lee argued successfully before the court of appeals that the State accused him of committing two offenses against two separate victims in one count of the information but erroneously failed to give the jury a unanimity instruction. The court of appeals found, however, that the error was harmless. *Lee*, 77 Wn. App. at 124. Lee argues that the failure to give a unanimity instruction cannot be harmless error where alternative crimes are charged and in support cites this court's opinion in *State v. Stephens*, 93 Wn.2d 186, 607 P.2d 304 (1980).

In *Stephens*, the State charged the defendant with one count of assault against two victims: Richard Heieck and Norman Jahnke. The jury was instructed, however, that it must find that the defendant assaulted Richard Heieck *or* Norman Jahnke. *Id.* at 189. The court found this instruction impermissible because it allowed conviction if six jurors believed the defendant assaulted Jahnke and six believed he assaulted Heieck. "The instruction, in effect, split the action into two separate crimes (assault against Jahnke and assault against Heieck), while the information charged only one." *Id.* at 190. Because alternative crimes were charged in the "to convict" instruction, but no unanimity instruction was given, the court con-

cluded that the defendant's right to a unanimous verdict was violated, requiring reversal. *Id.* at 190-91.

■ If the information and instructions given here presented an alternative crimes situation such as occurred in *Stephens*, we might be inclined to agree with Lee that failure to give a unanimity instruction constituted reversible error. However, as the State persuasively argues, this is an alternative means of commission case and an expression of jury unanimity is not required if the evidence supports each alternative means charged. *See State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984); *State v. Arndt*, 87 Wn.2d 374, 376-77, 553 P.2d 1328 (1976).

■ As stated earlier, the theft count of the information charged that Lee

> did wrongfully obtain or exert unauthorized control and/or did, by color or aid of deception obtain control over property, of a value in excess of $250.00, belonging to Lucila Dominguez and/or the American Red Cross, with intent to deprive the same of such property . . . .

Clerk's Papers at 52. RCW 9A.56.020, which defines the four types of theft—theft by taking, embezzlement, theft by deception, and appropriation of lost or misdelivered property—defines a single crime. *State v. Southard*, 49 Wn. App. 59, 62, 741 P.2d 78 (1987). As the court in *Southard* explained,

> Although the elements of each type of theft are different, they are connected to and not inherently different from each other, as each type of theft is merely a variation on the theme of unlawfully obtaining the property or services of another
> . . . .
>
>     . . . .
>
> Accordingly, if there is substantial evidence to support each alternative means charged, "unanimity of the jury as to the mode of commission is not required."

*Southard*, 49 Wn. App. at 62 (citing *State v. Arndt*, 87 Wn.2d 374, 376, 553 P.2d 1328 (1976)).

The court of appeals in this case cited *Southard* and agreed that in one sense "this is an alternative means case because the information charges a single count of theft alleging two alternative modes of commission." *Lee*, 77 Wn. App. at 123. The court then added that this was also an alternative crimes case "because there were two potential victims and Mr. Lee had a right to know who his victim was." *Id.* at 123. Relying on *Stephens*, the court of appeals concluded that use of a unanimity instruction was required in the present case:

> · Here, the jury had before it the question of *how* the crime was committed, as well as the question of *whether* it was committed. In order to determine that, the jury must necessarily have determined who the victim was. *Stephens*, at 190. Mr. Lee had a right to know whether it was the Red Cross, Ms. Dominguez, or both, and he had a right to a unanimous verdict on the question.

*Lee*, 77 Wn. App. at 124.

While we share the court of appeals' concern that Lee be informed as to the victim's identity, here the victims were named in the information but not in the "to convict" instruction. Thus, unlike the instruction in *Stephens* which created alternative crimes, only one count of theft committed by alternative means was charged in these instructions.

■ Moreover, there was no error in failing to include the names of the victims in the "to convict" instruction. The "to convict" instruction given in this case sets forth the statutory elements of second degree theft contained in RCW 9A.56.020 and RCW 9A.56.040. This statutory definition, in turn, tracks the language of the former larceny statute, RCW 9.54.010. This court repeatedly held that the name of the person from whom property is stolen was not an element of larceny. *State v. Jefferson*, 74 Wn.2d 787, 790, 446 P.2d 971 (1968); *State v. Easton*, 69 Wn.2d 965, 967-68, 422 P.2d 7 (1966). The "to convict" instruction here also mirrors the language of WPIC 70.06, which sets

forth the elements of second degree theft. The pattern instruction refers simply to the property "of another," and an intent to deprive "the other person." No provision is made for the insertion of a proper name. 11A *Washington Practice*, WPIC 70.06 (1994).

Other authorities agree that in cases of theft and larceny proof of ownership of the stolen property in the specific person alleged is not essential. The State is required to prove only that it belonged to someone other than the accused. *State v. Leierer*, 242 La. 961, 964, 140 So.2d 375 (1962); *see also State v. Leicht*, 124 N.J. Super. 127, 132, 305 A.2d 78 (1973); 52A C.J.S. *Larceny* § 99 at 572 (1968); 50 AM. JUR. 2D *Larceny* § 27 at 37 (1995).

■ Lee also argues that since the information was read to the jury, it became the law of the case. The jury was aware from the information that two victims of theft were named. Thus, Lee contends that a unanimity instruction was required because the jury could be unanimous in concluding that a theft had been committed but be split as to the identity of the victim. Added elements become the law of the case, however, only when they are included in instructions to the jury. *State v. Hobbs*, 71 Wn. App. 419, 423, 859 P.2d 73 (1993); *State v. Rivas*, 49 Wn. App. 677, 683, 746 P.2d 312 (1987). Since the victims were not named in the instructions, this argument fails.

The name of the victim, however, is not superfluous in a theft case, as the court of appeals correctly observed. Though not a necessary element of a theft instruction, allegations of ownership must be sufficiently stated in an information to establish that the property was not that of the accused, to protect the accused against a second prosecution for the same crime, and to avoid misleading or embarrassing the accused in the preparation of his or her defense. 50 AM. JUR. 2D § 139 at 131 (citing *Clark v. State*, 293 So. 2d 768, 769 (Fla. Dist. Ct. App. 1974)); *see also Von Tonglin v. State*, 200 Ark. 1142, 1146, 143 S.W.2d 185 (1940) and 52A C.J.S. § 99 at 572. "The names of the owners of stolen property constitute no part of the offense and

are stated in the information primarily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused." 50 Am. Jur. 2d § 139 at 131.

In some jurisdictions, an information that fails to allege ownership in the person from whom it is charged the property was taken may be amended, and the accused may be brought to trial on the amended information. 50 Am. Jur. 2d § 139 at 131; *State v. Jensen*, 83 Utah 452, 455, 30 P.2d 203 (1934). In other jurisdictions, an information may omit any allegation of ownership, provided the accused may request a bill of particulars. 50 Am. Jur. 2d § 139 at 131 (citing *State v. Shroyer*, 49 N.M. 196, 204, 160 P.2d 444 (1945)).

Here Lee does not contend that he lacked information regarding the State's theory or the identity of the victims. The information referred to the Red Cross and Lucila Dominguez as the victims of Lee's alleged theft, and gave Lee ample opportunity to prepare his defense.

We conclude that the "to convict" instruction provided in this case was correct and that no unanimity instruction regarding the victim's identity was needed. Moreover, the court of appeals' treatment of this case as one involving "alternative crimes" is incorrect. Lee was accused of only one act of theft—obtaining and cashing the $700 check. That he could have committed that theft in different ways does not turn this into a multiple crimes case. Rather, as stated earlier, the four types of theft constitute different ways in which a single crime may be committed. If there is substantial evidence to support each alternative means charged, no unanimity instruction is required.

## II

We must next decide whether there is sufficient evidence to support Lee's conviction. Lee now bases this argument on property law, arguing that a person in adverse possession of real property cannot commit theft by renting his possessory interest in the property to another.

This approach may be due to the court of appeals' statement, in discussing the evidence of Lee's intent to deprive, that "Mr. Lee had no right to convey a tenancy in property in which he himself had no possessory interest." *Lee*, 77 Wn. App. at 122. Whatever its origins, Lee's reliance on property law fails when elements of the crime of theft are analyzed.[1] This court recently defined the "property of another" element of theft as follows: " '[T]o constitute the property of another, the item must be one in which another person has an interest, and the defendant may not lawfully exert control over the item absent the permission of that other person.' " *State v. Joy*, 121 Wn.2d 333, 341, 851 P.2d 654 (1993) (quoting *State v. Pike*, 118 Wn.2d 585, 590, 826 P.2d 152 (1992)). Here, evidence was presented to show that Hanson was the owner of the 7th Street property, and that Lee was not to take possession until closing. Since Hanson owned the property and Lee had no right to use it without Hanson's permission, the residence was the property of another as to Lee and he had no possessory rights thereto. Thus, Lee's arguments that he did not deceive the Red Cross by stating he was the landlord of the 7th Street property because he had a possessory interest in the property must fail.

We are more persuaded by Lee's second argument, which is set forth in his appellant's brief:

> We are not arguing that one who wrongfully goes into possession of property and rents the property to a third party does not commit a crime. He obviously commits the crime of criminal trespass. RCW 9A.52.070(1). The crime, however, is committed against the true owner of the property, not the person who rents the property or the person supplying the rental funds. No crime was committed against Ms. Dominguez or the American Red Cross which provided the funds that

---

[1]Lee's reliance on property law also fails of its own accord, since there is no way that Lee's use of the 7th Street property satisfies the elements of adverse possession. To establish a claim of adverse possession, the possession must be exclusive, actual and uninterrupted, open and notorious and hostile, and under a claim of right made in good faith. These elements must exist concurrently for a period of ten years. *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984).

Ms. Dominguez used to rent the property. Each of these supposed victims received exactly what they bargained for . . ..

Br. of Appellant at 28. (The jury acquitted Lee of criminal trespass.)

As one authority states, a loss to the victim is key in assessing whether an unlawful taking has occurred:

> [F]or larceny, one must intend to deprive the owner of the possession of his property either permanently or for an unreasonable length of time, or intend to use it in such a way that the owner will probably be thus deprived of his property. Note that the matter is stated in terms of the owner's deprivation rather than the thief's gain, in recognition of the majority view that, for larceny, there need be no intent on the part of the thief to gain a benefit for himself . . . .

2 WAYNE R. LaFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.5 at 357 (1986); *see also* Annotation, *Intent to convert property to one's own use or to the use of third person as element of larceny*, 12 A.L.R. 804 (1921).

This principle was applied in *State v. Brokaw*, 134 Ariz. 532, 658 P.2d 185 (1982). *Brokaw* involved a defendant charged with acquiring the services of a limousine rental agency by means of material misrepresentation. The agency claimed that the value of services taken amounted to $320, while the defendant argued that he received the benefit of less than $100 worth of service. The court rejected the defendant's valuation:

> The problem with this argument is that nothing in the theft statute requires that the offender receive the benefit of stolen services. The crime is committed by 'obtaining' services . . . . We conclude, therefore, that the correct measure of the value of services . . . is the value of the performance actually brought about by the offender's conduct, *that being the value that most correctly represents the loss to the victim.*

*Brokaw*, 134 Ariz. at 535 (emphasis added); *see also Rowland v. State*, 744 S.W.2d 610, 612 (Tex. Crim. App. 1988) (court concluded that an intent to deprive could be

established where a defendant withheld property permanently or for so long that the owner lost a greater part of its value or enjoyment).

■ In Washington, as in Arizona, the theft statute does not require that the offender be benefited by the theft. RCW 9A.56.020 also speaks in terms of the offender obtaining control over the property or services of another. Thus, it appears that the loss to the victim, rather than the benefit to the offender, is key in determining the existence and the value of a deprivation.

The State argues that Valenzuela and Dominguez faced possible eviction at the hands of Hanson, and were placed in peril by Lee. *See Lee*, 77 Wn. App. at 122-23. It is important to note, however, that this peril did not lead to injury. Dominguez and Valenzuela were not displaced by Lee's actions—in fact, his actions secured them the housing that both they and the Red Cross desired. Thus, Lee's acquisition of the $700 resulted in no loss either to the Red Cross or Dominguez, as each received what they bargained for.

The victim here, if any, was Hanson, the owner of the 7th Street residence. His listing agent testified that he told Lee's real estate agent that "if Mr. Lee was going to occupy the property prior to closing, we needed a written agreement, and the date of move-in. And rent should be charged from that date of move-in until the date of closing." Report of Proceedings at 258. He added that such rent would be paid to Hanson, owner of the property.

Clearly, no such agreement was ever written, and no rent was ever paid. But the State never referred to Hanson as a victim of Lee's theft, or to the 7th Street property as constituting the subject of the theft. This may have been due to the fact that the residence was virtually uninhabitable before Lee's family repaired it. The value of property is measured by its market value at the time of the theft. RCW 9A.56.010(12); 2 LaFave & Scott § 8.4 at 352. To constitute second degree theft, the taking must be of property or services valued at more than $250. RCW

9A.56.040. Here, the State presented no evidence of the property's rental value when Lee received the $700 check in late June. According to the Lees, however, the residence was without rental value until repairs were completed for well over $700 in early July. Thus, even if Hanson were the victim, the evidence is insufficient to establish that he suffered a second degree theft. While Lee's actions may constitute theft, the State did not present sufficient evidence to establish that those actions deprived any of the parties of $250 or more in either cash or rental value. Accordingly, we reverse Lee's theft conviction.

Given our resolution of this issue, we need not address the question of jury coercion. We reverse the Defendant's judgment and sentence for second degree theft and remand for dismissal of the information with prejudice.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE, and PEKELIS, JJ., concur.

Reconsideration denied December 19, 1995.