**FILED**
**FEBRUARY 9, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38221-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT JAMES ROGERS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Robert Rogers appeals his convictions for first-degree trafficking in stolen property and third-degree theft. We affirm.

FACTS

In January 2020, Nicole Sim advised the Stevens County Sheriff's Office that Robert Rogers had stolen a chainsaw from her porch on January 8. Ms. Sim lived, along with her two daughters and her grandmother, at the Colville property where the chainsaw was stored. On January 13, Ms. Sim informed Detective Travis Frizzell that she had been in contact with Mr. Rogers. According to Ms. Sim, Mr. Rogers had told her on January 9 "that he would return the saw the following day," but "that she had not heard from Rogers since, and he had not returned the saw." Clerk's Papers (CP) at 9.

There had been two chainsaws on the porch at the time of the theft: one belonging to Tim Brauhn and one belonging to Joseph Hamilton. Mr. Brauhn and Mr. Hamilton, apparently both woodsmen, were half-brothers and Ms. Sim's uncles. At the time she reported the chainsaw stolen, Ms. Sim believed that Mr. Hamilton's chainsaw was the one taken and advised law enforcement accordingly. In reality, the stolen chainsaw was Mr. Brauhn's.

The chainsaws were being stored on Ms. Sim's porch because friends of Mr. Brauhn had delivered the chainsaws, along with other personal effects, after Mr. Brauhn fell ill. Mr. Brauhn had been hospitalized on Christmas Eve and would die less than two months later. Mr. Brauhn apparently had his brother's chainsaw in his possession as well as his own at the time he was hospitalized, which is why both were being stored on the porch of Ms. Sim's residence.

Detective Frizzell contacted Joseph Hamilton, who lived in Airway Heights. Mr. Hamilton told the detective that he did "not really know" Mr. Rogers, and described Mr. Rogers as a friend of his brother, Tim Brauhn. *Id*. The next day, Detective Frizzell learned that a chainsaw had been pawned at a shop in Colville.[1] Detective Frizzell

---

[1] An employee testified that everything pawned at this shop was automatically reported to local law enforcement.

responded to the pawn shop and obtained a copy of a slip confirming that Mr. Rogers had

pawned a Husqvarna 385XP chainsaw on January 8—the same day it went missing from

Ms. Sim's porch—for $200. Detective Frizzell took photographs of the chainsaw and

texted them to Mr. Hamilton. Mr. Hamilton responded that he was 90 percent sure the

chainsaw was his. Mr. Hamilton said his nephew, who frequently used the chainsaw,

lived nearby and could identify the saw. The nephew positively identified the saw as

belonging to his uncle.

On January 24, 2020, the State charged Mr. Rogers by information with first-

degree trafficking in stolen property in violation of RCW 9A.82.050, and third-degree

theft in violation of RCW 9A.56.020(1)(a). The information identified the stolen and

trafficked property as a "Husqvarna 385XP chainsaw" taken on or around January 8,

2020, and identified Mr. Hamilton as the chainsaw's owner. CP at 6-7. The information

accused Mr. Rogers of "wrongfully obtain[ing] control over" the chainsaw. *Id.* at 7.

The case proceeded to a two-day jury trial in March 2021. Before the jury was

seated, the trial court conferred with counsel about its "initial instructions that describe

the nature of the case." 1 Report of Proceedings (RP) (Mar. 24, 2021) at 209. The court

previewed the instruction as follows: "It is alleged that on or about January 8, 2020, Mr.

Rogers wrongfully obtained and pawned a chainsaw belonging to Joseph Hamilton." *Id.*

The prosecutor told the court, "I don't think we need the belonging to part." *Id.* The court asked Mr. Rogers's counsel if he approved of taking out the language identifying Mr. Hamilton as the chainsaw's owner, and Mr. Rogers's counsel agreed.

Detective Frizzell testified first. He described his investigation, as summarized above, and explained that "[a]t the time" Ms. Sim reported the chainsaw stolen, she had said the owner was Mr. Hamilton. *Id.* at 241.

Ms. Sim testified next. She explained:

- On January 8, 2020, she got home from work to discover the chainsaw missing.

- She apparently learned from her grandmother that "Robert Rogers showed up and took one [chainsaw] off the porch and he just walked off and put it in the car and took off." *Id.* at 245.

- Ms. Sim knew Mr. Rogers as an acquaintance of her uncle, Mr. Brauhn.

- She contacted Mr. Brauhn before he died to get Mr. Rogers's phone number, and then attempted multiple times to contact Mr. Rogers to find out what happened to the chainsaw.

- When Mr. Rogers "finally answered" Ms. Sim on January 9, she "told him that he didn't have permission to take the chainsaw[ ] or to come onto [her] property in general and [she] wanted it back." *Id.* at 246.

- Mr. Rogers replied that Mr. Brauhn had given him permission to "borrow" the chainsaw and he promised to "bring it right back." *Id.*

- She identified the pawned chainsaw in Detective Frizzell's photographs as one belonging to her uncle.

- Mr. Rogers did not tell Ms. Sim in their phone conversation that he had already pawned the chainsaw.

On cross-examination, Ms. Sim clarified that the chainsaw Mr. Rogers took belonged to Mr. Brauhn, not Mr. Hamilton. She also agreed with defense counsel that Mr. Rogers had been helping Mr. Brauhn with his woodcutting operation that year. At the time Mr. Brauhn fell ill, he was apparently living with Mr. Rogers at the home of their mutual friend, Leroy Buchanan, who had recently died.

Mr. Hamilton also testified. He explained that in January 2020 he became aware that a chainsaw had gone missing from Ms. Sim's porch, and that he initially thought it was his chainsaw that had gone missing. Mr. Hamilton testified that he contacted Mr. Rogers, who told Mr. Hamilton that Mr. Brauhn had given him permission to borrow the chainsaw. Mr. Rogers promised Mr. Hamilton he would bring the chainsaw back, but said he needed it for a few days to clear trees. Mr. Rogers never told Mr. Hamilton that he was going to pawn the chainsaw, or that he actually had already pawned it.

A pawn shop employee also testified and authenticated the pawn slip

memorializing that on January 8, 2020, Mr. Rogers pawned a Husqvarna 385XP chainsaw

matching the serial number of Mr. Brauhn's chainsaw.

After the State rested, Mr. Rogers testified as the defense's only witness. Mr.

Rogers said that Mr. Brauhn was his "best friend and business partner," explaining that

they had lived and worked together. 1 RP (Mar. 25, 2021) at 305. Mr. Rogers testified

that Mr. Brauhn had purchased the Husqvarna chainsaw that he later took off Ms. Sim's

porch. But Mr. Rogers characterized his work with Mr. Brauhn as a joint enterprise,

explaining that their tools became part of the enterprise, and that they did not hold their

tools as individual property. Mr. Rogers testified that the two men stored their tools at a

residence they shared and that neither of them needed the permission of the other to use

any of their tools.

Mr. Rogers testified that he took the chainsaw off Ms. Sim's porch because he

needed it to clear fallen trees at his parents' property. He said he initially intended only to

use the saw to clear the fallen trees, but he ended up pawning the chainsaw because

"finances got hard." *Id.* at 320. Mr. Rogers explained that he believed he had the right

to pawn the chainsaw because "[i]t was community property with me and [Mr. Brauhn]."

*Id.* at 321. Mr. Rogers admitted he told Ms. Sim and Mr. Hamilton that he was going to

bring the chainsaw back. He said he told them that because Mr. Brauhn did not get along

with his brother or niece, and that he was putting off telling them the truth "until I could

converse with [Mr. Brauhn] and tell him the situation and he told me he was going to deal

with it." *Id.* at 322.

On cross-examination, Mr. Rogers testified that he and Mr. Brauhn did "not really"

have a business, but rather, cutting trees was "just something that we do." *Id.* at 324. He

also agreed that the men had no formal property agreement. Mr. Rogers testified that he

did not purchase the chainsaw, that it was "[t]echnically" Mr. Brauhn's property, and that

he took it off Ms. Sim's porch.[2] *Id.* at 324-25. He also testified that he did not knock on

the door and tell Ms. Sim's grandmother that he was going to take the saw, because he

did not believe he needed her permission. He confirmed he pawned the chainsaw the

same day he took it and that he later promised Ms. Sim and Mr. Hamilton that he would

return it.

The trial court instructed the jury. Unlike the information, which had named Mr.

Hamilton as the chainsaw's owner, the to-convict instruction for the theft charge did not

name a victim. The instructions defined "[t]heft" as "wrongfully obtain[ing] *or* exert[ing]

---

[2] The State also introduced Mr. Rogers's prior convictions for theft and obtaining control over stolen property as impeachment evidence.

unauthorized control over" the property of another, as opposed to the information, which had conflated the two phrases. CP at 117 (emphasis added).

In closing argument, the prosecutor told the jury, "That was Mr. Brauhn's chainsaw and there's really nothing to suggest otherwise." 1 RP (Mar. 25, 2021) at 360. The prosecutor expressed incredulity toward Mr. Rogers's story of joint ownership, positing that if he genuinely believed he was the chainsaw's co-owner, he would not have promised Ms. Sim and Mr. Hamilton that he would bring it back.

In his closing argument, Mr. Rogers's trial counsel emphasized that his client and Mr. Brauhn had had a "business relationship[ ] and personal relationship[ ]." *Id.* at 366-67. Defense counsel invited the jury to conclude that the chainsaw was the joint property of Mr. Brauhn and Mr. Rogers and asked, rhetorically, "Where is the evidence that my client didn't have a right to the chainsaw?" *Id.* at 371-72.

The jury found Mr. Rogers guilty of both charges. The trial court sentenced Mr. Rogers to 84 months in prison, to run consecutively to sentences imposed in other cases. Mr. Rogers timely appeals.

ANALYSIS

*Good faith claim of title*

Mr. Rogers contends his trial attorney rendered ineffective assistance of counsel because he did not raise the defense of good faith claim of title or request an instruction on that defense. In order to establish ineffective assistance of counsel, Mr. Rogers must show counsel provided deficient performance that resulted in prejudice. *State v. Reichenbach,* 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Mr. Rogers cannot establish ineffective assistance because defense counsel's performance was not deficient.

Good faith claim of title is a statutory defense, which provides:

> In any prosecution for theft, it shall be a sufficient defense that . . . [t]he property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable . . . .

RCW 9A.56.020(2)(a). The rationale for the defense is that a good faith belief of title "negates the requisite intent to steal." *State v. Hicks*, 102 Wn.2d 182, 184, 683 P.2d 186 (1984). At trial, Mr. Rogers's attorney argued Mr. Rogers had a legal interest in the chainsaw, but as pointed out on appeal, counsel never argued that Mr. Rogers had asserted his interest in the chainsaw in a way that would meet the criteria for good faith claim of title.

9

We reject Mr. Rogers's criticism of defense counsel's trial performance because good faith claim of title was not a viable defense. *See State v. Calvin*, 176 Wn. App. 1, 14, 316 P.3d 496 (2013) (failure to request a jury instruction not deficient performance where defendant not entitled to the instruction). There is no evidence that Mr. Rogers "openly and avowedly" asserted ownership over the chainsaw. RCW 9A.56.020(2)(a); *see State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995) (defendant not entitled to jury instruction on his theory of the case when there is no evidentiary support for the theory). Instead, Mr. Rogers appropriated the chainsaw from Ms. Sim's porch without alerting anyone to his actions. When Ms. Sim and Mr. Hamilton asked what Mr. Rogers had done with the chainsaw, Mr. Rogers did not assert an ownership interest. Nor was he truthful. When confronted with what happened to the chainsaw, Mr. Rogers deceptively claimed the chainsaw would be returned instead of disclosing that he had already pawned it. The defense of good faith claim of title does not apply in such circumstances. *See State v. Hull*, 83 Wn. App. 786, 799, 924 P.2d 375 (1996) (good faith claim of title defense not available when theft perpetrated through deception).

*Counsel's failure to move to dismiss charges*

Mr. Rogers contends that his trial counsel rendered ineffective assistance by failing to move to dismiss the charges after the prosecution's case-in-chief. He argues that, at

that point, the State had failed to prove a chainsaw was stolen because it had not proved the identity of the chainsaw's owner. According to Mr. Rogers, had defense counsel made a timely motion, his case would have been dismissed mid-trial and he would not have been convicted. We are unpersuaded.

In a criminal case, a defendant may challenge the sufficiency of the evidence at the end of the prosecution's case-in-chief. *State v. Jackson*, 82 Wn. App. 594, 607-08, 918 P.2d 945 (1996). The trial court analyzes such a claim "using the most complete factual basis available." *Id.* at 608-09. The relevant inquiry would have been whether "after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*." *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

Here, by the end of the State's case-in-chief, it had presented testimony that Mr. Rogers surreptitiously took a chainsaw from Ms. Sim's porch, pawned it the same day, all while reassuring Ms. Sim and Mr. Hamilton that he would return the saw. A rational fact finder could appraise that evidence and conclude that Mr. Rogers "wrongfully obtain[ed]" someone else's property "with intent to deprive" them of that

11

property. RCW 9A.56.020(1)(a).[3] And a rational fact finder could conclude, on the basis

of that evidence, that Mr. Rogers "knowingly initiate[d] . . . the theft of property for

sale to others." RCW 9A.82.050(1). Thus, the trial court would have denied any

motion to dismiss the charges, and trial counsel's failure to so move was not deficient

representation.

*Discrepancies between jury instructions and charging document*

Mr. Rogers claims he was convicted of an uncharged crime due to discrepancies

between the information and the jury instructions with respect to the charge of theft.

We disagree.

"[I]t is error to try and convict a defendant of a crime that is not charged." *State v.*

*Huyen Bich Nguyen*, 165 Wn.2d 428, 434, 197 P.3d 673 (2008). This court reviews

charging documents "as a whole, according to common sense and including facts that are

implied, to see if [they] 'reasonably apprise[ ] an accused of the elements of the crime

charged.'" *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010) (quoting *State v.*

*Kjorsvik*, 117 Wn.2d 93, 109, 812 P.2d 86 (1991)). "[C]harging instruments which fail to

set forth the essential elements of a crime in such a way that the defendant is notified of

---

[3] Contrary to Mr. Rogers's arguments on appeal, the theft charge did not require the State to prove who owned the chainsaw. *See State v. Lee*, 128 Wn.2d 151, 158-59, 904 P.2d 1143 (1995).

both the illegal conduct and the crime with which he is charged are constitutionally

defective, and require dismissal." *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775

(1992). By contrast, a charging document is sufficient if the "necessary facts appear . . . or

by fair construction can . . . be found" in it, so long as "inartful language" in the charging

document did not nonetheless "cause[ ] a lack of notice" of the charges. *Kjorsvik*,

117 Wn.2d at 105-06.[4]

The first discrepancy Mr. Rogers identifies pertains to the identity of the victim.

The information listed the owner of the chainsaw as Joseph Hamilton, while the jury

instructions did not name a victim.

The differences between the wording of the information and jury instructions did

not lead to an impermissible discrepancy. The identity of the victim is not an essential

element of a theft prosecution. *State v. Lee*, 128 Wn.2d 151, 158-59, 904 P.2d 1143

(1995). In fact, a jury need not necessarily unanimously agree on the victim's identity for

a theft conviction to be valid. *See id*. at 156-59; *see also State v. Jefferson*, 74 Wn.2d 787,

788-90, 446 P.2d 971 (1968). Mr. Rogers does not claim the discrepancy regarding the

---

[4] Mr. Rogers styles this claim as one of ineffective assistance of counsel, assigning error to trial counsel's "[f]ail[ure] to recognize" the discrepancies. Br. of Appellant at 1. However, he does not identify what trial counsel should have done differently. Although it is not entirely clear, it appears Mr. Rogers essentially assigns error to the purported insufficiency of the information itself.

identity of the victim misled him or impeded the preparation of his defense. The

information put Mr. Rogers on notice that he was charged with stealing a Husqvarna

chainsaw on January 8, 2020. The information was sufficient because it gave him "ample

opportunity to prepare his defense." *Lee*, 128 Wn.2d at 160.

The second purported discrepancy involves the wording used to describe the crime

of theft. The information charged Mr. Rogers with "wrongfully obtain[ing] control" over

the chainsaw. CP at 7. Meanwhile, the jury instructions stated a defendant is guilty of

theft if they "wrongfully obtained or exerted unauthorized control" over another's

property. *Id.* at 117, 121. Again, Mr. Rogers fails to point to an impermissible

discrepancy.

The theft statute, RCW 9A.56.020, lists different types of theft but nonetheless

"defines a single crime." *Lee*, 128 Wn.2d at 157. Subsection (1)(a) of the statute

criminalizes theft by taking, subsection (1)(b) criminalizes theft by deception, and

subsection (1)(c) criminalizes appropriation of lost or misdelivered property. *See Ager*,

128 Wn.2d at 91. Theft by taking occurs when one "wrongfully obtain[s] or exert[s]

unauthorized control over the property or services of another . . . with intent to deprive."

RCW 9A.56.020(1)(a); *see also* RCW 9A.56.010(23) (giving "[w]rongfully obtains" and

"exerts unauthorized control" the same definition). The information charged Mr. Rogers

14

with theft by taking under RCW 9A.56.020(1)(a). And that is the provision he was convicted of violating pursuant to the court's instructions. There was no discrepancy.

*Counsel's failure to recognize a more specific alternative*

Mr. Rogers argues trial counsel should have recognized he could have been charged with a more specific crime, and cites RCW 9A.56.010(23). But as the State rightly notes, that provision does not criminalize any behavior; it is merely a definitional statute. This claim is without merit.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, A.C.J.                    Staab, J.

15