IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39102-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SERAFIN MORAN-SANTIAGO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Serafin Moran-Santiago appeals his conviction for rape of a child in the third degree. He argues the evidence is insufficient to sustain his conviction because the State failed to prove beyond a reasonable doubt that he and the victim were not married. He also challenges a condition of community custody as unconstitutionally vague.

We conclude the State presented sufficient evidence to sustain the conviction, accept the State's concession related to the community custody condition, and remand for the trial court to modify "romantic/sexual relationships" to "dating/sexual relationships."

FACTS

On the night of April 28, 2021, 15-year-old A.G.[1] was home in Spokane drinking

alcohol with a friend while her parents were at work.  A.G.'s brother also was home.

That night, Serafin Moran-Santiago, a friend of A.G.'s father and the fiancé of A.G.'s

aunt, arrived at the home.

Mr. Moran-Santiago lived in Florida but flew to Spokane to recover from surgery

on his ruptured appendix.  He called both his fiancée and A.G.'s father for a ride from the

airport, but neither was available because both were working.

Mr. Moran-Santiago decided to rent a car to drive to A.G.'s father's house.  When

he arrived, he saw A.G. and her friend on the ground screaming.  He called A.G.'s father

to tell him about the girls and asked that he come home.  Instead, A.G.'s father called

A.G.'s mother, who left work to check on the girls.  Mr. Moran-Santiago waited outside

for A.G.'s mother to arrive.

When A.G.'s mother arrived, A.G.'s friend no longer was at the house.  A.G.'s

---

[1] To protect the privacy interests of the minor child, we use her initials throughout
this opinion.  Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct.
App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/
appellate_trial_courts.

mother was upset by her daughter's intoxicated condition. But she had to return to work, so she asked Mr. Moran-Santiago and A.G.'s brother to watch A.G.

Mr. Moran-Santiago and A.G.'s brother joined A.G. on the back porch, where she was listening to music. Later that evening, Mr. Moran-Santiago twice asked A.G.'s brother to leave the patio. A.G.'s brother complied with the second request and went inside to his room downstairs to play video games.

Once Mr. Moran-Santiago was alone with A.G., he put her hand on his penis. Mr. Moran-Santiago next told A.G. to stand up. He directed her to a table, stood behind her, removed her shorts, and had sexual intercourse with her. Afterward, A.G. and Mr. Moran-Santiago went inside the house and sat on the couch until A.G.'s mother returned home. A.G. went to bed without telling her mother what happened.

When A.G. awoke the next day, she thought the rape was just a dream. But when she went to the bathroom, she noticed the smell of semen in her underwear.

A.G. called her friend and told her that her "uncle" raped her. Rep. of Proc. (RP) at 68. A.G.'s mother learned about the rape through the mother of A.G.'s friend and took A.G. to a local hospital emergency room. Once there, a nurse performed a sexual assault examination on A.G.

An analyst with the Washington State Patrol Crime Laboratory compared oral, vaginal, perineal, and right and left thigh skin swabs collected from A.G. with a DNA[2] sample taken from Mr. Moran-Santiago. The analyst found the presence of spermatozoa on the vaginal swab that matched Mr. Moran-Santiago's DNA profile.

*Procedure*

The State charged Mr. Moran-Santiago with rape of a child in the third degree. During trial, the State's witnesses testified consistent with the facts above.

Mr. Moran-Santiago testified in his defense. He testified multiple times that he was the boyfriend of A.G.'s aunt. He denied that anything sexual occurred between A.G. and him. When testifying why he was nervous around her, he explained, "[The light from inside the house shining through the windows to the patio] matters to me because even if I'm the aunt's boyfriend, I don't have a right to be in a dark place with a child." RP at 183.

The trial court's to-convict instruction included an element of child rape in the third degree that required the State to prove beyond a reasonable doubt that A.G. was not married to Mr. Moran-Santiago when they had sexual intercourse. The jury found Mr. Moran-Santiago guilty.

---

[2] Deoxyribonucleic acid.

The court sentenced Mr. Moran-Santiago to 13 months of confinement and 36 months of community custody. The court also imposed a condition of community custody that Mr. Moran-Santiago challenges on appeal:

> 11) Do not enter into romantic/sexual relationships without the prior approval of your CCO[3]and/or Therapist and not without disclosing your criminal history as verified by your CCO and/or Therapist.

Clerk's Papers (CP) at 73.

Mr. Moran-Santiago timely appealed.

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE

Mr. Moran-Santiago contends the evidence was insufficient to convict him because the State failed to prove beyond a reasonable doubt that A.G. and he were not married. We disagree.

"The sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When a defendant challenges the sufficiency of the evidence, the proper inquiry is, "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d

---

[3] Community custody officer.

1068 (1992). As noted in the trial court's instructions to the jury, "[a] reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence." CP at 43. Our review is highly deferential to the jury's decision. *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Salinas*, 119 Wn.2d at 201. All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Id.* Circumstantial evidence is not to be considered any less reliable than direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Under RCW 9A.44.079(1), a person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least 14 years old but less than 16 years old and the perpetrator is at least 48 months older than the victim. In 2021, the legislature amended the statute by removing the element that required the State to prove that the victim and the defendant were not married at the time of the intercourse. *See* former RCW 9A.44.079(1) (1988); S.B. 5177, 67th Leg., Reg. Sess.

6

(Wash. 2021).  The amendment became effective April 26, 2021, two days before the

charged crime.  *Compare* S.B. 5177, *with* CP 1.

The State concedes that the inclusion of the former element in the to-convict

instruction required it to prove that element.  *See State v. Hickman*, 135 Wn.2d 97, 102,

954 P.2d 900 (1998) ("In criminal cases, the State assumes the burden of proving

otherwise unnecessary elements of the offense when such added elements are included

without objection in the 'to convict' instruction."); *State v. Lee*, 128 Wn.2d 151, 159,

904 P.2d 1143 (1995) ("Added elements become the law of the case . . . when they are

included in the instructions to the jury.").  Accordingly, the State had to prove beyond a

reasonable doubt that A.G. and Mr. Moran-Santiago were not married at the time of the

intercourse.

Mr. Moran-Santiago argues the State failed to present any evidence of A.G.'s

marital status, so the evidence it presented was insufficient to support the disputed

element.  We disagree.

The State presented evidence that on the date of the charged crime, A.G. was 15

years old and Mr. Moran-Santiago was 40 to 45 years old.  A.G. lived in Spokane and Mr.

Moran-Santiago lived in Florida.  Mr. Moran-Santiago testified he had dated A.G.'s aunt

for three years and when describing being with A.G. on the lighted porch, remarked, "I'm

7

the aunt's boyfriend, I don't have a right to be in a dark place with a child." RP at 183. Finally, A.G. told her friend that her "uncle" had raped her. RP at 68. Construing the evidence and all reasonable inferences in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that A.G. and Mr. Moran-Santiago were not married on the day of the charged crime.

Mr. Moran-Santiago, citing *State v. Arndt*, 179 Wn. App. 373, 320 P.3d 104 (2014), argues that his conviction must be reversed unless the evidence shows it was "impossible" that he was not married to A.G. Appellant's Br. at 10. We disagree.

In *Arndt*, we were asked to determine whether an Oregon conviction for third degree rape should be counted toward the defendant's criminal history for sentencing purposes. *Id.* at 388-89. When discussing the legal comparability of the Oregon and Washington offenses, we noted that the Oregon statute was broader, partly because Washington required the State to prove that the defendant and the victim were not married. *Id.* at 388. When discussing the factual comparability prong, we noted, "Arndt did not make any admission or stipulation [in the Washington sentencing proceeding] regarding marital status and the record from the Oregon proceeding [did] not reflect the marital status of Arndt or the victim." *Id.* at 389. We concluded, "[i]nferences from Arndt's testimony at sentencing in the present case or from the Oregon marriage statute

are not sufficient for a Washington sentencing court to conclude that the fact

that Arndt and the victim were not married was proved *beyond a reasonable doubt*."

*Id.* (emphasis added).

In a footnote, we additionally wrote, "The State's arguments do not show that it

was *impossible* for Arndt and the victim to have been married." *Id.* at 389 n.10 (emphasis

added). Mr. Santiago seizes on the word "impossible" in arguing that *Arndt* requires his

conviction to be reversed unless the State proved it was "impossible" for him to have

been married to A.G. The word "impossible" in the footnote does not accurately reflect

the analysis in the body of the opinion. In the body of the opinion, we expressly applied

the "beyond a reasonable doubt" standard. *See id.* at 389.

We distinguish *Arndt* on the basis that here, there was significant evidence from

which a rational trier of fact could have found beyond a reasonable doubt that Mr. Moran-

Santiago and A.G. were not married.

COMMUNITY CUSTODY CONDITION 11

Mr. Moran-Santiago argues that community custody condition 11, which requires

that he obtain approval before entering into "romantic/sexual relationships," is

unconstitutionally vague. The State concedes this argument and we accept the State's

concession.

9

We have previously held that the phrase "romantic relationship" used in a community custody condition is unconstitutionally vague. *State v. Peters*, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019). Recently, the Washington State Supreme Court held that the phrase "dating relationship" is not unconstitutionally vague. *In re Pers. Restraint of Ansell*, No. 100753-1, slip op. at 8-14 (Wash. Aug. 10, 2023), https://www.courts.wa.gov/opinions/pdf/1007531.pdf. We remand for the trial court to strike the word "romantic" and substitute the word "dating," to read "dating/sexual relationships."

We affirm the conviction and remand for the trial court to amend community custody condition 11.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____
Staab, J.

_____
Birk, J.*

\* The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).